UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANH L. DU,**
    **Plaintiff,**   Case No.:

v.

**DENIS R. McDONOUGH,** *Secretary*,
**DEPARTMENT OF VETERANS AFFAIRS,**
    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiff, Anh L. Du, complains of Defendant, Denis R. McDonough, Secretary, Department of Veterans Affairs as follows:

1. This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, including 42 U.S.C. §2000e-16 and 42 U.S.C. §2000e-2(m).

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted their administrative remedies.

3. James A. Haley VA Hospital (Haley VA), is a Veterans Administration (VA) hospital and medical center with related services, including the Prosthetic and Orthotics Service. Plaintiff, Anh L. Du, is an Asian American (Vietnamese) female, over 40, who has worked at the Haley VA since 2009. She is currently a GS-11, Step 9, Certified Orthotist/Prosthetist working in the Prosthetics Department. Plaintiff completed her residency there under then Chief, James Barnes and Chief Janet Bullard. Steve Doerr (Caucasian male) was Plaintiff's proctor from 2009-2010. Joseph Shamp (Caucasian male) was the Plaintiff's mentor and proctor during the time of her prosthetics residency and later became the Chief of the Orthotics Lab in 2012, remaining her

first line supervisor until Chief Shamp's retirement. Mr. Shamp remained the Chief of the Orthotics Lab until he retired in January 2019. Janet Bullard (African-American female) is the Chief of the entire Orthotics and Prosthetics Service and has been in this position since April 2009. Chief Bullard has remained in Plaintiff's supervisory chain since her employment began at the Haley VA. Brittany Robinson (African-American female) was an Orthotics resident at the Haley VA from 2016 through October 2, 2018. Michael Kartel (Caucasian male) is a Lead Certified Orthotist/Prosthetist at the Haley VA, and served as the Orthotic resident proctor over Brittany Robinson. Kartel also served as the Acting Chief of the Orthotics section of the Service in or about May 31, 2019 through August 2019, and is Plaintiff's co-worker. William "Bill" Conroy (Caucasian male) is a Lead Certified Orthotist/Prosthetist at the Haley VA, and Plaintiff's co-worker. Conroy also served as the Prosthetic resident proctor over Brittany Robinson. Suzanne Tate (Caucasian female) is the Assistant Director of the Haley VA. Joseph Battle (Caucasian male) was the Director of the Haley VA during the relevant time of this complaint.

4. Each of the individuals described herein were employed by or had a contractual employment relationship with the Defendant and were acting within the course of his or her employment with the Defendant at the time of the conduct described herein.

5. Plaintiff began experiencing discrimination based on her race, national origin, as well as, sexual harassment in or around October 2009. During this time Plaintiff endured sexual harassment from her colleague/residency proctor, Steve Doerr (Caucasian male). Mr. Doerr continually made inappropriate sexually explicit comments to and about Plaintiff, including, but not limited to, discussing how his wife refused to have sex with him and go down on him, how Plaintiff was only hired because she "had big tits," how the veteran patients only liked Plaintiff because she "reminded them of the prostitutes in Vietnam;" and make mockingly comments to

2

Plaintiff saying "me love you long time." Mr. Doerr continued to sexually harass Plaintiff. He made a make-shift "dildo" out of equipment from the lab, and would poke Plaintiff with the "dildo," place it on her shoulder and on a mannequin in the lab where Plaintiff was and made inappropriate sounds and obscene gestures with it. He also would place his foot under Plaintiff's dress or skirts and make sounds as if he was taking pictures of her under her skirt/dress. Furthermore, would often view pornographic material on the work computers, including materials depicting bestiality. Plaintiff first engaged in protected activity when she opposed this behavior and reported the harassing and discriminatory behavior to management (including, but not limited to, Mr. Shamp and Chief Bullard). Management did not take the appropriate actions to protect her, in violations of *Faragher-Ellerth*. Ultimately, a Final Agency Decision (FAD) was issued against the Agency in November 30, 2012, finding that the Plaintiff had in fact been "subjected to unlawful sexual and racial harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, Section 701, *et. seq.,* 42 U.S.C. 2000e, *et. sec…*. and management failed to act appropriately to protect her. This resulted in Plaintiff filing her first EEO complaint on November 11, 2011, Agency Case No. 200I-0673-2012100495. That case resulted in a Final Agency Decision in favor of the Plaintiff and settlement was reached close to 2014, with the Agency being responsible for the Plaintiff's attorneys' fees and disciplinary action being taken against the listed responsible management officials involved in that case. Specifically, as a result of the Final Agency Decision, Chief Janet Bullard was disciplined and received a two-week suspension without pay and ordered to take additional EEO training on sexual and racial harassment. Notably, Mr. Doerr was, in fact, promoted to the Chief of Prosthetic Lab at a VA in North Carolina after this incident occurred and remained in regular contact with Chief Shamp prior to Chief Shamp's retirement. It is unknown if Chief Shamp was disciplined. Nonetheless, Chief Shamp and Chief Bullard remained in

Plaintiff's supervisory chain-of-command.

6. Subsequent to the resolution of Plaintiff's first EEO case, she continued to experience differential treatment than those who were not in same protected class(es) as her, including but not limited to, being denied training/promotional opportunities and subjected to unfounded/baseless fact-findings. The differential treatment and hostile work environment continued, resulting in Plaintiff filing her second informal EEO complaint on September 5, 2018 and her formal EEO complaint on October 18, 2018 (Agency Case No. 200I-0673-2018106113) and filing her third informal EEO complaint on July 9, 2019 and her formal EEO complaint on August 7, 2019 (Agency Case No. 200I-0673-2019104533). Both of those actions are the subject of this instant complaint and named the same Responding Management Officials (RMOs), Chief Shamp and Chief Bullard, as were involved in Plaintiff's prior EEO case.

## GENERAL ALLEGATIONS

### Race, Sex, Reprisal (Prior EEO Activity), and Harassment/ Hostile Work Environment

7. As a result of Plaintiff's prior EEO activity, and based on Plaintiff's race and sex, Plaintiff was subjected to hostile work environment specifically as follows:

8. In or around January 2018, Haley VA resident, Brittany Robinson, began to display hostile and discriminatory behavior towards Plaintiff.

9. Plaintiff reported her concerns to management regarding Robison's bullying and hostile behavior beginning early February 2018 and ongoing through May 2018. During this time, Plaintiff also continued to voice her concerns about patient safety regarding Robinson seeing patients that were not under her direct care, or seeing patients without a Certified Prosthetist being present. This was a violation of VA policy. Plaintiff discussed with management her concerns that Robinson was disregarding the specific requests of patient to be seen by Plaintiff and continually

ignored the patients' requests, proceeding to take of the patients' care without authorization, disregarding VA policies and procedures, and putting patients' health and safety at risk and continually exposing the department to unnecessary liabilities and risks. Management did nothing.

10. On February 8, 2018, a verbal exchanged occurred between Plaintiff and Robinson when Robinson entered the Prosthetics lab where Plaintiff was working and approached Plaintiff in an aggressive and hostile manner, accusing Plaintiff, in an unprofessional and raised tone of voice, of "stealing her patient," and called Plaintiff "inhuman." Plaintiff immediately made a report of contact regarding the incident to both Chief Bullard and Chief Shamp reporting the harassment and hostile actions of Robinson, and requests management's assistance. Management took no action.

11. Unbeknownst to Plaintiff at the time, on or about February 20, 2018, an unfounded fact-finding was initiated against Plaintiff regarding the incident she reported on February 8, 2018. Plaintiff did not learn this fact-finding was initiated until she was provided the Fact-finding inquiry Memorandum from Chief Shamp on March 2, 2018.

12. On February 22, 2018, while Plaintiff was working in the prosthetic lab, Robinson started pointing at Plaintiff, raising her voice and shouting, "Look at her face! Look at her face! She is giving me dirty looks!" Plaintiff reported this harassing and hostile behavior to management immediately and again requested management's assistance.

13. On February 23, 2018, Plaintiff was falsely accused by Robinson of documenting a patient chart without actually seeing the patient. This false accusation impacted Plaintiff's professional reputation and put Plaintiff's licensure at risk. Despite the fact this accusation proved to be false, management took no disciplinary action against Robinson.

14. On May 15, 2018, while Plaintiff was seeing a patient, (the same patient that Robinson accused Plaintiff of falsely documenting the chart), Robinson entered the patient room. Plaintiff requested on behalf of the patient that Robinson not be present during the clinic visit due to the patient's mental health state and per the request of the patient for Robinson not to be in the room during the examination. Robinson refused to leave, violating the patient's HIPAA rights, and stated loudly, "I am a resident. This is a learning hospital and I have every right to be here!" Plaintiff responded to her by explaining that the patient has the right to request who he/she wants to be in the clinical environment according to HIPAA regulations and reported the incident to both Chief Shamp and Chief Bullard. Management failed to provide Plaintiff with any support or resolution and did not take any disciplinary action against Robinson, or to allow Plaintiff to have any Union Representation present during a meeting with Chief Shamp to discuss the incident.

15. On May 15, 2018, Plaintiff was removed and escorted out from her station in the Prosthetics department without any prior notification, warning or counseling and advised by Chief Shamp that "upper management" decided to have Plaintiff completely stop seeing prosthetic patients.

16. On May 17, 2018, Plaintiff was placed on Temporary Detail assigned to research at an off-site CBOC, pending a fact-finding inquiry. During the time Plaintiff was detailed, she was excluded from doing any prosthetics or customized orthoses and was advised by Chief Shamp to stop seeing prosthetic patients.

17. On May 23, 2018, Chief Bullard sent a mass email to the entire Prosthetics department at the Haley VA, excluding Plaintiff, disclosing that Plaintiff had been reassigned to a different department and instructing others to not "get involved." Chief Bullard disclosed further in the email that they were "working with HR, Union, and the EEO to resolve this matter."

18. On May 25, 2018, Plaintiff was informed that she was no longer permitted to participate in her Saturday clinics, while her white, male co-workers, Bill Conroy and Michael Kartel were permitted to keep participating in their respective clinics. Plaintiff had been participating in that Saturday Clinic for over a year prior to her abrupt removal.

19. On May 30, 2018, Plaintiff was given an unfounded Written Counseling issued by Chief Shamp, accusing Plaintiff of soliciting patients to write letter of support of her. The Written Discipline demanded that Plaintiff cease contact with prosthetic patients and to only act in the capacity of a certified Orthotist. Plaintiff was not provided with any evidence supporting the allegations alleged in the Written Discipline despite her repeated request for the same.

20. On or around June 7, 2018, Chief Bullard disregarded and ignored Plaintiff's requested Comp time to complete paperwork, such as sending 1090s, ordering, and closing encounters.

21. On June 7, 2018, Chief Shamp demanded proof of Plaintiff's ABC Continuing Education Unit (CEU) records, and denied Plaintiff's request to attend an in-service for an Otto Bock prosthetics knee. All prosthetists/physical therapist. Physicians/ RAC prosthetists and prosthetic residents were invited, and none of the other practitioners were required to provide proof of CEUs.

22. On or before June 25, 2018, Plaintiff communicated her concerns to management, including Chief Shamp and Chief Bullard, regarding the discriminatory and punitive actions being taken against her and requested written justification for the basis of issuing her a written discipline, denying her comp time requests, removing her duties of seeing prosthetics patients, preventing her from further education opportunities, removing her from the Saturday Clinic, and subjecting her

baseless fact-findings with indefinite resolutions or conclusions. Management did not provide any Plaintiff any written or verbal justification.

23. On June 27, 2018, management reiterated to Plaintiff that she was not perform her duties as a credentialed prosthetist/orthotist when she was instructed not to make any contact with the prosthetic patients.

24. On or about June 27, 2018, Plaintiff was not permitted to attend any educational in-serves on new prosthetic or orthotic components that were new to the market and that which would have benefited Plaintiff's knowledge to better serve the patients; however, Plaintiff's co-workers were permitted to attend these educational in-services. Plaintiff was also excluded from every Friday-morning staff meeting for the department.

25. On or about June 28, 2018, Plaintiff learned that her veteran Husband's sensitive medical records had been acceded without authorization by Orthotic fitter Joseph Kennedy (Caucasian male) and resident Brittany Robinson.

26. On July 7, 2018, Chief Bullard denied Plaintiff's request to be detailed to another VA location out-of-state.

27. On July 9, 2018, Plaintiff was issued a Proposed Reprimand based on a biased and incomplete fact-finding inquiry regarding the February 8, 2018 incident involving Robinson. During the fact-finding inquiry, Chief Bullard told Robinson that she (Robinson) was a "better person" than Plaintiff. Chief Bullard later admitted to making the statement to Robinson.

28. On July 20, 2018, Chief Shamp denied Plaintiff's request to attend education in-services, while allowing other white, male co-workers to attend.

29. On July 23, 2018, Chief Shamp denied Plaintiff's request to attend the MyoPro and Naked Prosthetics educational in-services, while allowing her other white, male co-workers to attend.

30. On July 25, 2018, Chief Shamp denied Plaintiff's request for signed copies of her Functional Statement, Mid-Term review for 2018 and Performance Appraisals for FY 2016 and 2017.

31. On August 28, 2018, Plaintiff was presented with a fact-finding inquiry without any information, basis or justification, and issued an Extension of Temporary Detail Memorandum.

32. In or around August 28, 2018, Plaintiff's tour of duty was changed without explanation.

33. In or around August 28, 2018, Plaintiff was advised that she was being required to send an email to the Lab Chief and the timekeeper every morning at the start of her tour of duty, despite Plaintiff having an exemplary record of timely attendance. None of Plaintiff's co-workers were required to do the same. This tour of duty also interrupted the care of Plaintiff's husband, whom is a combat injured veteran and a patient at the Haley VA, and that Plaintiff is the VA Certified Caregiver of; management was well aware of this fact.

34. On August 29, 2018, Chief Bullard issued Plaintiff a Reprimand based on a biased fact-finding investigation regarding the February 8, 2018 incident with Robinson.

35. On August 29, 2018, Chief Bullard admitted she told Robinson that Robinson was a "better person" than Plaintiff and that Robinson "should have known that Plaintiff would "blow up."

36. On September 5, 2018, Plaintiff filed her informal EEO complaint and management of her EEO complaint (Agency Case No. 200I-0673-2018106113).

37. On September 7, 2018, Chief Shamp and Chief Bullard denied Plaintiff's request for official time off or Authorized Absence ("AA") to meet with her attorney regarding EEO matters.

38. On September 14, 2018, Plaintiff learned she had been booked for her Wednesday Lakeland Clinic through November 2018, from 8:00 a.m. to 2:40 p.m., with back-to-back patients every 20 minutes, without breaks or a lunch period. This was in violation of her tour of duty schedule and VA policy and AFGE Master Union Agreement.

39. On September 17, 2018, Plaintiff was excluded from an education in-service for a vacuum prosthetic casting system.

40. On September 19, 2018, Chief Shamp interrogated Plaintiff regarding her request for emergency family leave and denied Plaintiff patient coverage during Plaintiff's emergency family leave, despite there being six licensed practitioners and two residents from the main Haley VA campus.

41. Management continued to deny Plaintiff with same educational and promotional opportunities that were afforded to her white, male co-workers, including but not limited to, promoting her white male, counterparts to lead positions, higher GS grades and, giving them each their own specialty clinic(s).

42. On or about October 18, 2018, Plaintiff filed her formal EEO complaint. (Agency Case No. 200I-0673-2018106113) with Chief Shamp and Chief Bullard listed as the RMOs in her complaint.

43. On January 15, 2019, Plaintiff was excluded from a department meeting that all of the clinicians in the Prosthetics department and others outside of the department were invited to, except for the Plaintiff.

44. Upon the retirement of Chief Shamp, in or around mid-May 2019, Kartel was made the Acting Chief of the Orthotics Department and remained in that role for several months.

45. On June 23, 2019, Chief Bullard, without justification, charged Plaintiff as Absent Without Leave (AWOL), after Plaintiff was previously approved to attend and work at the Warrior Games. Plaintiff reported this retaliatory and discriminatory act to management, including the Director Joseph Battle, Assistant Director Suzanne Tate, then Acting Assistant Chief, Michael Kartel, and Human Resources. Other co-workers of the Plaintiff were permitted to remain at the Warrior Games and were not marked AWOL for their attendance.

46. On June 24, 2019, Plaintiff was forced to return to duty and leave the Warrior Games.

47. On June 26-28, 2019, management denied Plaintiff leave and marked her AWOL, despite her receiving prior approval.

48. On July 3, 2019, Chief Bullard requested additional information pertaining to Plaintiff's three-day out-of-office doctor's excuse and inquired of Plaintiff about her personal health information.

49. On July 3, 2019, Chief Bullard inquired into Plaintiff's husband's medical condition and demanded Plaintiff to provide additional medical documentation regarding her husband.

50. On July 3, 2019, Michael Kartel, in the presence of a vendor made a derogatory and discriminatory comment in a hostile tone of voice to Plaintiff, "Am I not speaking English to

you?" When making this statement and on other occasions, Kartel slowed down his speech noticeably and in a mocking tone of voice.

51. On or about July 5, 2019, Plaintiff learned that she was being accused by Chief Bullard of being disruptive at the Warrior games on June 24, 2019.

52. Plaintiff again reported her concerns to management regarding the hostile, harassing, retaliatory, and discriminatory actions being taken against her, however, management did nothing to assist the Plaintiff.

53. On July 9, 2019, Plaintiff filed her informal complaint (Agency No. 200I-0673-2019104533) regarding the new incidents that had occurred. ORM notified the RMOs, including Chief Bullard and Acting Assistant Chief Kartel, shortly thereafter.

54. On July 15, 2019, after reporting harassment to management, a baseless fact-finding was initiated against Plaintiff accusing her of ordering prosthetics items without a doctor's order and for disruptive conduct at the Warrior Games. Plaintiff was subsequently subjected to an OIG investigation related to the same false accusations of the ordering of prosthetics items without a doctor's order, which the subject of the July 15, 2019 fact-finding. Plaintiff was informed in the Spring of 2020 that management advised the OIG not to continue with their investigation at that time. No further information was provided to Plaintiff.

55. On July 16, 2019, Assistant Director Suzanne Tate, refused to assign Plaintiff a neutral party to conduct the fact-finding, and instead assigned a supervisor in the same department as Plaintiff and the RMOs involved in Plaintiff's EEO complaints.

56. On or about July 31, 2020, Plaintiff learned that Kartel had followed Plaintiff's husband and her around the Warrior Games in June 2018, and took dozen photos of her husband and of Plaintiff without their knowledge or authorization. Kartel also asked a VA contracted

vendor to surveillance and follow plaintiff and her husband for three days straight taking unauthorized photos of them. Kartel subsequently distributed and shared these unauthorized photos to Suzanne Tate, Janet Bullard, Human Resources, and two outside-VA contracted individuals, Emily Crawford and Arlene Gillis, during federal duty hours.  This was a violation of VA policy.

57. From May 2018 to present Plaintiff has remained detailed out without receiving any written findings or conclusion regarding the multiple fact-findings that were initiated.

58. Plaintiff has continued to be excluded from promotional opportunities and educational opportunities that other co-workers have been afforded that are of different protected class(es) than Plaintiff.

## COUNT I
### Sex (Female), Race (Asian)

59. Plaintiff, Anh L. Du, sues Denis R. McDonough, as Secretary of the Department of Veterans Affairs for Sex (female) and race (Asian) under Title VII.

60. Plaintiff incorporates and realleges paragraphs 1 through 58.

61. The Defendant, through the supervisors of Plaintiff, has engaged in, directed, and/or ratified discriminatory conduct, and has frustrated Plaintiff's efforts to obtain relief and intentionally maintained these discriminatory and unlawful practices to the detriment of its employees.  The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination actions being taken against Plaintiff and failed to take the necessary action to prevent or correct those actions and, in fact, ratified such conduct.  In the alternative, they were motivated by discriminatory animus and otherwise engaged in discriminatory differential treatment on the same bases.

62. The Defendant, through acceptance of such the complained of conduct, has fostered an attitude among supervisors within the Haley VA that race and sex discrimination are acceptable employment practices.

63. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

64. Plaintiff has satisfied all conditions precedent to filing of this suit or she has been prevented by the Defendant from satisfying such conditions precedent, or she is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

### Count II
### (Retaliation/Retaliatory Harassment)

65. Plaintiff, Anh L. Du, sues Denis R. McDonough, as the Secretary of Veterans Affairs, for retaliation under Title VII.

66. Plaintiff incorporates and realleges paragraphs 1 through 64.

67. Plaintiff engaged in EEO activity which is protected under Title VII that included good faith opposition to unlawful discrimination, as well as, her participation in her own EEO case.

68. The Defendant was aware of each of the Plaintiff's protected or EEO activities under Title VII.  Indeed, Plaintiff sent repeated emails to Haley VA management and leadership. ORM also notified them of her complaints.

69. The aforesaid adverse employment actions; or personnel actions; other adverse actions; misconduct, and other conduct, acts and omissions to the Plaintiff's detriment; as well as other adverse employment actions and conduct, were all taken (or failed to be taken) by administrators and managing and supervisory personnel with the Haley VA in retaliation for the protected or EEO activity of the Plaintiff including those set forth above. They were the direct and proximate result of the protected activity.  In the alternative they were motivated by her EEO activity or resulted in differential treatment.

70. As a direct and proximate result of the protected or EEO activity, Plaintiff has suffered the adverse employment actions and other adverse actions, including these set forth above.

71. The Defendant, through the supervisors of Plaintiff, has engaged in, directed, and/or ratified retaliatory conduct, and has frustrated Plaintiff's efforts to obtain relief and has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff and failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

72. The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors at the Haley VA that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by administrators, managers and supervisors at the Haley VA.

73. Because of the other unlawful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

74. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

75. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count III**
**(Harassment and Hostile Work Environment)**

76. Plaintiff, Anh L. Du, sues Denis R. McDonough, as the Secretary of Veterans Affairs, for harassment and hostile work environment under Title VII.

77. Plaintiff incorporates and realleges paragraphs 1 through 75.

78. The above harassment and hostile work environment were engaged in by the supervisory personnel within the VA to in order to harass the plaintiff due to her race, sex, and and/or protected EEO activity, or in the alternative was motivated by these protected characteristics or differential treatment played a role in the way personnel actions were made.

79. Given the long history of these actions and based upon all of the conduct alleged the Defendant at all relevant times knew, or should have known, of the above-referenced harassment and hostile work environment against Plaintiff and that it was based on her sex, race, and/or protected EEO activity. The Defendant has failed to take necessary action to prevent or correct the harassment and hostile work environment and, in fact, ratified such conduct.

80. The Defendant, through Plaintiff's supervisors and managers has engaged in, directed or ratified such conduct, and denied and frustrated Plaintiff's efforts to obtain relief. The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors at the Haley VA that harassment and a hostile work environment are acceptable employment practices.

81. Because of the willful actions of the Defendant and its administrators, managers and supervisors, or in the alternative because of actions motivated by protected characteristics animus, and as a proximate cause thereof as a result of differential treatment of the Plaintiff, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

82. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

83. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## Count IV
### (Injunctive Relief)

84. Plaintiff, Anh L. Du, sues Defendant, Denis R. McDonough, as Secretary of the Department of Veterans Affairs.

85. Plaintiff incorporates and realleges paragraphs 1 through 83.

86. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

87. There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, is issued, will not disserve the public interest.

88. Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

   a. Violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on sex and race.

   b. Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and

further relief as the Court deems just and appropriate.

DEMAND FOR JURY TRIAL

Plaintiff, Anh L. Du, hereby demands a trial by jury on all issues so triable.

Dated: July 6, 2022

                                        Respectfully submitted,

                                        ***/s/ Meagan A. Culpepper***
                                        Meagan A. Culpepper
                                        Fla. Bar No. 1008132
                                        Joseph D. Magri
                                        Fla. Bar No.: 0814490
                                        Merkle & Magri, P.A.
                                        5601 Mariner St., Suite 400
                                        Tampa, FL 33609
                                        Tel. (813) 281-9000
                                        Fax.: (813) 281-2223
                                        Email:mculpepper@merklemagri.com
                                                jmagri@merklemagri.com