**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANH L. DU,

      Plaintiff,

v.                                                                    Case No: 8:22-cv-1526-CEH-TGW

DEPARTMENT OF VETERAN
AFFAIRS,

      Defendant.

_____

**ORDER**

This employment action comes before the Court on Defendant Department of Veteran Affairs' Motion for Summary Judgment (Doc. 40). Plaintiff Anh Du filed a response in opposition to the motion (Doc. 53),[1] to which Defendant replied (Doc. 49). Oral argument on Defendant's motion was held on February 25, 2025 (Doc. 71). At the hearing, the Court ordered the parties to submit supplemental briefing (Doc. 72). Defendant filed supplemental briefing in support of its motion (Doc. 74), and Plaintiff filed supplemental briefing in support of her opposition (Doc. 80).

Upon review and consideration, and being fully advised in the premises, the Court will grant the motion for summary judgment.

---

[1] Plaintiff filed Doc. 53 as a corrected response to fix clerical issues in her original response (Doc. 46). *See* Doc. 51 (Plaintiff's Unopposed Motion for Leave to Correct Clerical Errors and Reduce Response to Motion for Summary Judgment).

1

## I. Facts[2]

Plaintiff Anh Du is an Asian American female who works at the Department of Veteran Affairs. Doc. 14-1 ¶ 3. Du works at the James A. Haley Veterans' Hospital ("Haley") in Tampa, FL. *Id.* Haley is a Veterans Administration hospital. Du has worked at Haley since 2009. *Id.* She is currently a GS-11, Step 9, certified orthotist/prosthetist working in the Prosthetics Department. *Id.* Defendant is the Department of Veteran Affairs ("VA").

In December 2011, Du filed an EEO complaint against Haley ("2011 EEO Complaint"). Doc. 53-3 at 2. On November 30, 2012, in a final agency decision, the EEOC found that Du was subjected to sexual and racial harassment in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 19, 26. Haley's Chief of Prosthetics, Janet Bullard, received a five-day suspension without pay as a result of her conduct in that case. Doc. 53-2 at 74. Bullard has been chief of prosthetics since 2009. Doc. 40-2 at 8. The events underlying the 2011 EEO Complaint are not at issue in this case.

### a. 2018 EEO Complaint

On February 8, 2018, Du had a verbal disagreement with Brittany Robinson, a prosthetics student completing a residency at Haley. Stipulation of Agreed Material

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Stipulation of Agreed Material Facts (Doc. 63). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Facts, Doc. 63 ¶¶ 2-3. Management initiated a fact-finding on the incident. *Id.* ¶ 3. The incident concerned Robinson allegedly stealing Du's patients. Doc. 40-1 at 15-27. Eight witnesses provided statements on the incident. *Id.* Prior to the incident, Du raised concerns she had with Robinson seeing Du's patients without her permission. Doc. 53-2 at 137. Another verbal altercation between Du and Robinson took place on February 22. Stipulation of Agreed Material Facts ¶ 4.

On May 15, 2018, a doctor at Haley was examining a patient when the door behind her opened. Doc. 40-1 at 42. That doctor heard Du yelling "you can't come in this is my patient[,]" to someone in the hall. *Id.* The doctor saw Du walk up to a patient and say "you don't want her in here do you?" *Id.* Du walked to the door and shouted to Robinson and the prosthetist "he doesn't want you in here." *Id.* The doctor was concerned about Du's "behavior changes, outbursts[,] and general unprofessionalism[,]" but reported that the resident "remained calm and professional." The doctor expressed concerns that residents were working in "a toxic environment." *Id.*

On May 17, 2018, Du was detailed to the Research Department pending a fact-finding about the alleged confrontation between Du and Robinson on May 15. Stipulation of Agreed Material Facts ¶ 5. On May 23, Bullard emailed the Prosthetics and Orthotics Department to notify them that Du was on detail and not to send prosthetics items to her because the Research Department had its own budget for prosthetic items. Doc. 40-1 at 46. In the email, Bullard says, "Please do not get

involved. We are working with HR, Union, and the EEO office to resolve this matter. In time we are hopeful that Ms. Du can return to Prosthetics in full capacity." *Id.*

On May 30, 2018, Haley's Chief of Orthotics, Joseph Shamp, issued Du a written counseling because a patient informed him that Du had asked the patient to write a letter of support for Du regarding her detail. *Id.* at 78. Shamp advised, "This is inappropriate, and must stop immediately." *Id.* Shamp directed Du not to provide any prosthetic care to patients during her detail and not to contact any prosthetic patients. *Id.* Shamp told Du that "at this time, you are functioning as an Orthotist." Stipulation of Agreed Material Facts ¶ 8.

On June 29, 2018, Du was issued a proposed reprimand based on her February 8, 2018, interaction with Robinson. Doc. 40-1 at 82-83. On July 20, Du was given a written reprimand with the charge of unprofessional conduct based on the February 8 incident with Robinson. Stipulation of Agreed Material Facts ¶ 11; Doc. 53-6 at 113.

On July 16, 2018, Du emailed Bullard and Shamp asking to attend a July 26, in-service training event at Haley led by Michael Kartel. Docs. 40-1 at 98; 53-5 at 134. Kartel is a white male and a certified GS-11 orthotist/prosthetist. The training was to enhance a specific patient's activities of daily living. Doc. 40-1 at 98. Shamp first denied Du's request saying the event was for practitioners actively working with that patient and did not provide any continuing education units. *Id.* at 92, 97. Du responded with a list of those who had been invited and said, "It seems to me that this is a reprisal to the ongoing investigation which has not come to a conclusion." *Id.* at 96. Shamp responded that Du could attend the July 26 program "as long as [she] arrive[s] just

4

prior to the meeting and report[s] to [her] detailed work station immediately after the meeting ended." *Id.* Shamp also says, "I see no problem with you attending this meeting." Du did not show up for the program. *Id.* at 63.

In a memorandum from August 28, 2018, Du's detail was extended. Stipulation of Agreed Material Facts ¶ 13. Du's detail was extended because an investigation found that "prosthetic devices . . . were issued by [Du] to patients without consults or prior authorization from the Amputee Clinic staff[.]" Doc. 40-1 at 125. Bullard, Shamp, and Assistant Director Suzanne Tate wrote letters of concern supporting this finding. *Id.* at 137-40. Du was instructed not to contact amputee patients. *Id.*

The August 28, 2018, memorandum also changed Du's tour of duty. Doc. 40-1 at 66. On Mondays, she would report to Research from 8:00 am to 4:30 pm, on Wednesdays to the Lakeland clinic from 8:00 am to 4:30 pm, and on Thursdays and Fridays to the Primary Care Annex at Hidden River from 7:30 am to 4:00 pm. Stipulation of Agreed Material Facts ¶ 13. Du's normal tour of duty was 8:00 am to 4:30 pm. Doc. 40-2 at 76. Bullard claims that the tour of duty change was a typo on the paper and that there was never a change. *Id.* Shamp also claims that the tour of duty was not changed. Doc. 40-1 at 66. Du claims her tour of duty was changed for a week until she contacted her attorney and discussed the issue with Shamp. Doc. 40-4 at 72-73.

Du alleges that on September 17, 2018, Shamp denied her request to attend an in-service training on a vacuum prosthetic casting system. Doc. 53-5 at 135. Shamp denies excluding Du from the training. Doc. 40-1 at 70.

On September 26, 2018, Shamp informed Du that she could no longer work at the Lakeland Orthotics Clinic. Doc. 53-6 at 117. Shamp told her that she could no longer work the Wednesday clinic because she was taking too many Wednesdays off. *Id.* Shamp informed her that the absences were disruptive to patient care. *Id.*

Du made her initial contact with EEO on September 5, 2018. Stipulation of Agreed Material Facts ¶ 14. On October 19, 2018, she filed a formal complaint ("2018 EEO Complaint") alleging discrimination and a hostile work environment based on race, sex, and reprisal for the events above. *Id.* Shamp and Bullard first became aware of Du's 2018 EEO Complaint on January 8, 2019. Doc. 40-1 at 55; Doc. 53-6 at 172. Du filed amendments to the 2018 EEO Complaint on January 9 and January 22, 2019. Doc. 53-6 at 79, 88.

### b. 2019 EEO Complaint

Du requested leave from June 21 to June 28, 2019, to be a part of the Haley Research Department for the Warrior Games.[3] Doc. 40-1 at 146. Du emailed Bullard on April 23 and May 1. Doc. 53-7 at 145. Bullard responded on May 2 that she needed guidance from Tate on how to code timecards for work hours in the Warrior Games. *Id.* at 144. Bullard informed Du that until guidance is provided her request would remain pending. *Id.* On May 14, Tate emailed Du on behalf of Bullard, who was unable to respond due to a death in her family, and stated Du could attend the Warrior

---

[3] The Warrior Games are a multi-sport event created by the Department of Defense for wounded, ill, and injured service members and veterans. Doc. 53-7 at 36.

Games for the three days that she was detailed for research. *Id.* at 143. Tate responded that Du may go three days a week for the research program but "needed to come back to [her] Prosthetics Service responsibilities for the other 2 days." Doc. 40-1 at 142.

On the morning of June 24, 2019, at the Warrior Games, Du approached the Orthotic and Prosthetics School ("O&P School") booth and asked Nicholas Mahairas, a student resident at Haley, for a tape measure. *Id.* at 154. Arlene Gillis had organized the clinical staffing for the O&P School which was treating veterans at the Warrior Games. *Id.* at 150-51. Gillis asked Du what she was doing and to return the tape measure. *Id.* at 154. Gillis told Du to send patients needing help to the O&P School booth. *Id.* According to Bullard, the O&P School was tasked with caring for prosthetics patients at the event and Du was not authorized to support the servicing of prosthetics patients. *Id.* at 148. Bullard indicates that Du was assigned to the research table, which was responsible for promoting the research program and recruiting new candidates. *Id.*

Later that day, Du called Mahairas asking him to bring her a valve for an amputee. *Id.* Du sent Mahairas a picture of what to bring and told him to come by himself. *Id.* Maharias brought the valve and put it in the amputee. Docs. 40-1 at 154; 40-4 at 112-13. Du texted Maharias afterward stating, "Thank you for your help. Been fixing up these guys, saving lives baby!!!" Doc. 40-1 at 157. Du states that by "saving lives" she meant providing water to the Warrior Games' participants and not seeing them clinically. Doc. 40-4 at 113. Gillis and Maharias gave Haley management written

accounts, by email, of what occurred with Du at the Warrior Games. Doc. 40-1 at 150, 154-55.

Tate received reports about Du working outside her scope of work at the Warrior Games and told Kartel to order Du back to duty. *Id.* at 164; Doc. 40-5 at 41. Du told Kartel that she was not going to do anything until she talked to Tate. Doc. 40-5 at 41. Tate then called Du and told her to return to the hospital. Doc. 40-1 at 173.

On July 1, 2019, Du submitted a doctor's note dated June 26 stating, "Anh Du was seen today at the MacDill Clinic and should be… Excused from work/school for medical reasons for 3 days." Stipulation of Agreed Material Facts ¶ 20. It stated, "[p]rocedure done to leg." *Id.* Bullard did not accept the note because it did not have a physician's stamp and describe the extent to which Du was incapacitated. *Id.* ¶ 21. Bullard observed that the doctor's note was dated for June 26-28, which is when Du was reported to have attended the Warrior Games. Doc. 40-1 at 180. Bullard noted that on June 24, Tate had instructed Du to return to work in Prosthetics. *Id.* Du did so on June 25, then called out of work for June 26-28. *Id.* In a July 3 email, Bullard stated that Du would be marked AWOL for June 26-28. *Id.* Du responded stating she was absent because her husband had a procedure on June 26 and that requesting further documentation would violate his privacy and HIPAA. *Id.* at 179. Du was observed and photographed at the Warrior Games from June 26-28. *Id.* at 189-93.

On July 3, 2019, Kartel, who was Haley's acting chief of orthotics at the time, overheard Du ask a vendor to bring a scanning device to the hospital. *Id.* at 200. Kartel intervened, telling Du that she could order the device. *Id.* Du began arguing, requesting

8

confirmation in writing and stating that Shamp, the former chief of orthotics, had told her she could not order it. *Id.* After telling Du multiple times that she could order the machine, Kartel said, "Am I not speaking English? I don't know how else to say we can get it." *Id.* Kartel claimed he did not make that statement directly to Du or in a hostile manner, rather it was a figure of speech to convey his disbelief that Du continued to reject his help. Doc. 53-7 at 109. Du claimed Kartel also said, "Do you understand English?" Doc. 40-4 at 110. Bullard informed Kartel after this incident that Du had filed an EEO complaint against him. Doc. 40-5 at 16, 21. Bullard ordered an investigation into Kartel's comment. Doc. 40-1 at 202.

On July 9, 2019, Du made initial contact with an EEO counselor. Stipulation of Agreed Material Facts ¶ 23. On August 20, 2019, she filed a formal complaint ("2019 EEO Complaint"). *Id.*

### c. 2021 EEO Complaint

On July 15, 2019, Jennifer Karczewski, Haley's assistant chief of prosthetics, was assigned to conduct the fact finding in the investigation of Kartel's July 3, 2019, comment. Doc. 53-7 at 186. In response, Du requested that someone who is neutral and not a part of the Prosthetics Department or Amputee Clinic conduct the fact finding. *Id.* Tate asked Du why she thinks Karczewski would not be neutral. *Id.* at 185. Du responded, "I am simply requesting a neutral party to do the fact finding." *Id.* Tate responded that Du has not provided any information to suggest Karczewski is not neutral and unless she provides reasonable justification, Karczewski will conduct the

9

fact finding. *Id.* Du responded that past personnel from the Prosthetics Department conducted fact findings in favor of the Prosthetics Department. *Id.* Tate replied that they will be moving forward with Karczewski as the fact finder. *Id.* at 184.

Du graduated from St. Petersburg College in May 2007. Stipulation of Agreed Material Facts ¶ 24. In March 2007, the National Commission on Orthotic and Prosthetic Education (NCOPE) granted development accreditation to the St. Petersburg College program. Doc. 40-1 at 223. The board "did not feel confident enough to move a recommendation of initial accreditation forward to CAAHEP" at the time. *Id.* St. Petersburg College did not receive its initial CAAHEP accreditation until November 2008. *Id.* at 249. On March 21, 2017, the national VA qualification standard for the occupation of Orthotist/Prosthetist, GS-667, was revised to require:

> (1) A bachelor's degree or higher in orthotics and prosthetics from a Commission on Accreditation of Allied Health Education Programs (CAAHEP) accredited program.
>
> OR
>
> (2) A bachelor's degree or higher in any major along with a post-graduate orthotics or prosthetics certificate from a CAAHEP accredited program.

Stipulation of Agreed Material Facts ¶ 25. In January 2021, Orthotics-Prosthetic Clinical Supervisor Jason Redd emailed Du and others to announce the approval of a GS-12 position. Doc. 40-1 at 279-80. Du responded expressing her belief that the educational requirements for the GS-12 position were "clearly prepared with the

exclusive intent to promote and hire Bill Conroy at the Tampa VA within the prosthetic department." *Id.* at 280.

On September 24, 2021, the job announcement for the GS-12 Orthotist-Prosthetist position was posted and included the educational qualification from the national VA qualification standard. *Id.* at 282-88. HR Specialist Deborah True, who did not know Du except by name, screened all candidates for qualification and experience. *Id.* at 291. True explained that candidates' education "needed to be approved by the accreditation agency (CAAHEP) by the time of graduation." *Id.* at 293. If the candidate did not meet that requirement, he or she is not referred or is removed from the referral with an explanation why. *Id.* True had no information about Du's race or sex at the time. *Id.* at 291. Candidates who submitted such information would be disqualified. *Id.* True was unaware of Du's EEO activity until her 2021 EEO complaint. *Id.*

Du applied for the GS-12 position on October 13, 2021. *Id.* at 310. On October 15, Du received an email stating that she was "tentatively eligible" for the position based on her self-rating of her qualifications and had been referred to the hiring manager. *Id.* at 312. The email stated that eligibility and education remained subject to verification. *Id.* On October 19, Redd emailed Du and Conroy stating they had both made the certificate of eligibles for the GS-12 position. *Id.* at 315.

On October 20, 2021, Redd emailed True asking whether developmental accreditation from NCOPE rather than full accreditation would affect the applicant

11

for the Tampa VA position. *Id.* at 220. On October 20, Du received an email stating she was ineligible for the position because she did not satisfy the education requirement in the vacancy announcement. *Id.* at 318. Du emailed Deborah True asking her to clarify why she did not meet the educational requirement. *Id.* at 322. Du acknowledged that the program was not accredited by the time she graduated and asked if she could appeal the decision. *Id.* at 321. True responded that the school had "developmental accreditation" and not full accreditation from NCOPE. *Id.* On October 22, Redd emailed NCOPE explaining that he was "working on promoting one of the orthotist-prosthetists" who was an early graduate from St. Petersburg College and requested information confirming its accreditation. *Id.* at 325. Redd forwarded St. Peterburg College's accreditation information to True. *Id.* at 324.

The only name remaining after Du was found ineligible was William Conroy, who had graduated from a CAAHEP-accredited program. *Id.* at 333. Conroy graduated from St. Peterburg College with a Bachelor of Applied Science in Orthotics and Prosthetics in May 2010. Doc. 53-5 at 38. On October 20, 2021, Redd selected Conroy for the position. *Id.* at 43. On November 11, Conroy's selection was approved. *Id.* On March 21, 2024, the American Board for Certification in Orthotics, Prosthetics, and Pedorthics Inc. (ABC) sent Du a letter, which stated that Du met the requirement of completing a CAAHEP accredited educational program. Doc. 53-4 at 15.

On November 5, 2021, Du made initial contact with an EEO counselor. Stipulation of Agreed Material Facts ¶ 26. On December 2, 2021, she filed a formal complaint ("2021 EEO Complaint"). *Id.*

### d. Procedural Background

In July 2022, Du filed this action against the VA. Doc. 1. Du filed an amended complaint on August 11, 2022, alleging violations under Title VII of the Civil Rights Act of 1964 of race discrimination (Count I), sex discrimination (Count II), retaliation (Count III), and retaliatory hostile work environment (Count IV). Doc. 14-1.

The VA filed its Motion for Summary Judgment. Doc. 40. Du filed her response and later filed a corrected response. Docs. 46, 53. The VA then filed its reply. Doc. 49. The Court held oral argument on the motion, after which it ordered the parties to submit supplemental briefing. Doc. 72. The parties then submitted supplemental briefing. Docs. 74, 80.

## II. Legal Standard

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2). In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Issues of fact are "genuine only if a reasonable jury,

13

considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770 (quoting *Anderson*, 477 U.S. at 252)

### III. Discussion

The VA moves for summary judgment on Du's Title VII claims for (1) race- and sex-based discrimination, (2) retaliation, and (3) retaliatory hostile work environment.

### a.  Race (Count 1) and Sex Discrimination (Count II)

Because Plaintiff is a federal employee, Title VII's federal-sector provision applies to her discrimination claims.[4] For federal employers, Title VII requires "[a]ll personnel actions affecting employees . . . be made free from any discrimination on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Personnel actions are defined in 5 U.S.C. § 2302 (a)(2)(A) and "include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews." *Babb v. Wilkie*, 589 U.S. 399, 405 (2020). "[F]ree from any discrimination" means that "personnel actions must be made in a way that is not tainted by differential treatment based on a protected characteristic." *Terrell v. Sec'y, Dept. of Veterans Affs.,* 98 F.4th 1343, 1351-52 (11th Cir. 2024) (cleaned up).  To defeat summary judgment for a Title VII claim, a federal employee "must show only that the protected characteristic 'played *any* part' in the employer's decision-making process when the employer engaged in the challenged action." *Rosado v. Sec'y, Dep't of the Navy*,

---

[4] This analysis also applies to Plaintiff's retaliation claims. To survive summary judgment, Plaintiff need only submit evidence that would allow a reasonable jury to find that retaliation played *any* part in the VA's decision-making process.

127 F.4th 858, 866 (11th Cir. 2025).[5] Put simply, to survive summary judgment, Du must offer sufficient evidence that her race or sex played a role in the VA's personnel actions. *See Marshall v. Sec'y of Navy*, No. 24-12910, 2025 WL 1733680, at *2 (11th Cir. June 23, 2025). Evidence of discriminatory intent may be established "through circumstantial evidence, including discriminatory comments, suspicious timing, arbitrariness in the employer's actions, pretext in the employer's rationale, better treatment of similarly situated . . . employees outside the protected group, and similar experiences by [employees of the protected group]." *Bell v. Sec'y, Dep't of Veterans Affs.*, No. 22-12698, 2024 WL 1462405, at *4 (11th Cir. Apr. 4, 2024).

In its motion for summary judgment, the VA argues that Du has not provided evidence that her race or sex played any part in its decision-making process. Doc. 40 at 19, 20, 23. The VA argues that the administrative record from the 2018, 2019, and 2021 EEO Complaints timely raised eight events, but there is not evidence in the record to suggest that race or sex played a role in the decision-making behind any of those events. Doc. 74 at 5.

The Court will now consider the eight events. In so doing, the Court notes that the issue of whether the actions taken by the VA were adverse employment actions is

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973) establishes the traditional framework for evaluating disparate-treatment claims using circumstantial evidence. Du is not bound by this framework as it is no longer applied to federal-sector claims. *See Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1352 (11th Cir. 2024); *but see Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 866 (11th Cir. 2025) ("Of course, if a federal employee wishes to use the *McDonnell Douglas* framework to state a claim, he may continue to do so. It's just that *McDonnell Douglas* imposes a heavier burden than a federal employee must satisfy.").

not addressed by the parties. Thus, the Court assumes, without deciding, that the challenged actions were adverse employment actions.

### i. Request to attend trainings (July 16, 2018)

Du alleges that she was the only Asian American female who had engaged in EEO activity who was denied these trainings and numerous white males attended. Doc. 80 at 11. However, Du fails to provide citations to the record to support this claim or name a comparator.[6] The only potential comparator for this claim in the record would be Kartel who was a white male that held the same position as Du at the time and attended the July 26 training. But Du and Kartel cannot be said to be similarly situated because Kartel was hosting the July 26 training and not merely an attendee. Doc. 53-5 at 134. There is no genuine dispute of material fact regarding whether Du's race or sex played a role in her request to attend these trainings.

### ii. Extension of temporary detail (August 28, 2018)

### iii. Change of tour of duty (August 28, 2018)

Du argues that a change in her tour of duty was motivated by race and sex. Doc. 80 at 11-12. Du contends that she provides an exhibit comparing her schedule for clinics on Wednesdays with her male coworker's schedule for Fridays.[7] *Id.*

---

[6] A proper comparator must be similarly situated to the plaintiff. *Johnson v. Miami-Dade Cnty,* 169 F. 4th 1301, 1308 (11th Cir. 2026).

[7] Du also argues that there were no Asian American females scheduled for the Friday clinics in August 2018. But she does not provide a citation to the record for this claim.

17

For the purposes of evaluating a discrimination claim, "[i]f the same policies were applied differently to similarly ranked employees, those employees may be compared." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011).

Du has failed to point to any evidence in the record that suggests this change was made in part due to her race or sex. The only relevant evidence Du provides is a comparison of her patient schedule with that of another coworker's schedule. Doc. 53-5 at 62-71. Du alleges that this is a male coworker's schedule, but she does not point to anywhere in the record to show that this coworker is in fact male or similarly situated. The schedule only indicates "coworker Friday clinic[,]" without providing details of the coworker such as a name, race, sex, or job title. *Id.* at 68-69. There is no genuine dispute of material fact regarding whether Du's race or sex played a role in her extension of detail or change of tour duty.

### iv.  Reprimand (August 29, 2018)

Du argues that her reprimand was issued in part due to her race or sex. Doc. 80 at 6-7. In support, Du cites multiple exhibits. *See e.g.,* Doc. 53-4 at 51-53 (statement from American Federation of Government Employees Union to Janet Bullard); 53-4 (email from patient to Shamp re incident between Du and Robinson). However, Du fails to explain how this evidence supports a finding that race or sex played a part in the reprimand. *See Brown v. Parker Hannifin Corp.*, 6:98-cv-616-GKS, 1999 WL 1449761, at *13 (M.D. Fla. Oct. 13, 1999) ("As the party opposing summary judgment, [Plaintiff] was required to identify specific evidence in the record, and to

18

articulate the precise manner in which that evidence supports [her] claims" (citation modified)).

Du also claims that the VA showed favoritism towards Robinson. Doc. 80 at 13. The VA argues that Du cannot successfully use Robinson as a comparator for her discrimination claim because they were not similarly situated. Doc. 74 at 7.

To be an adequate comparator, the preferentially treated individual from outside the plaintiff's protected class has to be similarly situated in "all material respects." *Johnson v. Miami-Dade Cnty.*, 169 F.4th 1301, 1308 (11th Cir. 2026). "[A] valid comparator is ordinarily someone who: (1) has engaged in the same basic conduct (or misconduct) as the plaintiff, (2) is subject to the same employment policy, guideline, or rule as the plaintiff, (3) is under the jurisdiction of the same supervisor as the plaintiff, and (4) shares the plaintiff's employment or disciplinary history." *Id.* A helpful question is whether the plaintiff and the comparator are "similar enough that they cannot reasonably be distinguished?" *Id.*

Robinson was not similarly situated to Du. At the time of the February 8 incident, Robinson was a prosthetics student-resident at Haley. Du was a prosthetist/orthotist at Haley. Doc. 40-2 at 32, 91. Du and Robinson had different responsibilities. *See* Doc. 53-6 at 151 ("As a new resident within the first few months into her residency, [Robinson] is not permitted to work on patient's prosthetics without supervision."). Additionally, Robinson and Du were under the purview of different supervisors. Robinson reported to her resident proctor, Conroy, and Du to Shamp.

19

Doc. 40-1 at 10; Doc. 53-6 at 200. Thus, there is no genuine dispute of material fact regarding whether Du's reprimand was connected to her race or sex.

### v. Exclusion from training (September 17, 2018)

### vi. AWOL charge (July 3, 2019)

### vii. Denial of sick leave (July 3, 2019)

Du disputes the facts underlying these decisions but fails to argue that race or sex played a role in them. Du does not allege in her summary judgment briefing that these actions were due to her race or sex. Additionally, the record does not support such a finding. There is no genuine dispute of material fact regarding whether these events were based in part due to Du's race or sex.

### viii. Non-selection for the GS-12 position (October 20, 2021)

Du claims that although she graduated from St. Petersburg College, which did not receive its initial CAAHEP accreditation until November 2008, Du and other students were recognized as having met the educational requirements at the time they were hired. Doc. 80 at 14-15. In support Du provides a March 21, 2024, letter in which the American Board for Certification in Orthotics, Prosthetics, and Pedorthics Inc. (ABC) stated that Du met the requirement of completing a CAAHEP accredited educational program. Doc. 53-4 at 15. However, this letter came after the VA's decision on October 20, 2021. Du did receive an email on October 15, 2021, stating she was eligible for GS-12 positions in Tampa, Florida. Doc. 40-1 at 312. However, the email stated that Du was "tentatively eligible" for the position based on her self-

20

rating of her qualifications and had been referred to the hiring manager. *Id.* The email also stated that eligibility and education remained subject to verification. *Id.* Du has not pointed to evidence creating a genuine dispute of material fact regarding whether she met the educational requirements at the time Haley was hiring for the GS-12 position. Even if she had, Du has not pointed to any evidence that race or sex played a role in her non-selection for the position. There is no genuine dispute of material fact regarding whether Du's race or sex played a part in her non-selection for the GS-12 position.

### ix. Other events[8]

---

[8] Du claims that because the VA addresses only eight events from her 2018, 2019, and 2021 EEO Complaints, her burden is to only respond to those eight events. In a motion for summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by showing that the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id. at* 322-23. "[T]he moving party simply may . . . point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). After the movant meets its burden, the nonmovant must "go beyond the pleadings" to designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1). The VA claims that Du cannot point to evidence showing that her race or sex played any part in the VA's decision-making process. Doc. 40 at 19 ("[T]he record shows there is no evidence that management's actions were at all motivated by Plaintiff's sex [or] race[.]"). Therefore, Du must now point to evidence that race or gender played a role in the VA's decision-making.

In her response, Du argues that Shamp removed her from the Lakeland Clinic and did so on the basis of her race and sex. Doc. 53 at 12. Du argues that her white male co-workers were permitted to work this clinic. *Id.*

The record does not indicate that only Du's white male co-workers were permitted to work at the Lakeland Clinic. *See* Doc. 53-6 at 117, 142. In a sworn declaration, Du says none of her "other colleagues were removed from clinics if they request[ed] time off[.]" *Id.* at 117. However, Du does not identify the names, race, or sex of any of these colleagues. The record reflects that Du was removed from this Wednesday clinic because she was taking too many Wednesdays off, which Bullard claims was disruptive to patient care. *Id.* at 117. Du's conclusory statement in her brief that her white male co-workers were permitted to work at the Lakeland Clinic instead of her is insufficient to create a genuine issue of material fact. *See Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) ("Statements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists.").

Du also claims she was denied multiple trainings on the basis of her race and sex. Doc. 80 at 9. Du points to her sworn declaration in which she describes being denied from trainings on June 4, September 17, and November 16, 2018. There is no evidence in the record to suggest that she was denied these trainings on the basis of her race or sex. For the trainings on September 17, 2018 and November 16, 2018, Du provides the email invitations for these meetings but does not provide any evidence of how she requested to attend these trainings or how she was denied. *See* Docs. 53-4 at

22

87, 179; 53-5 at 135, 137. This evidence is insufficient to create a genuine issue of material fact.

In her sworn declaration, Du goes through a list of other trainings that she alleges Kartel and Conroy attended but that she was denied from attending.[9] Doc. 53-5 at 129-30. Du identifies Conroy as a white male at Haley in the orthotist/prosthetist GS-11 role.[10] *Id.* at 129. Du's declaration simply lists the name of the training and does not provide any other details such as when the training occurred, who else attended, how she requested to attend, or how she was denied attendance. Du's sworn declaration alone is not enough to show she suffered an adverse employment action in part due to race or sex. *See Williams v. Collins*, No. 20-CV-22094, 2020 WL 13863963, at *6 (S.D. Fla. Nov. 16, 2020) ("Plaintiffs' self-serving [s]worn [s]tatements, without more, will not defeat summary judgment.").

Du also points to sworn declarations from Haley employees in support of the claim that she was not provided training opportunities that other white male clinicians were provided. Doc. 53-4 at 16-21. These declarations do not provide sufficient facts to create a genuine issue of material fact regarding whether Du suffered an adverse employment action in part due to race or sex. One former Haley employee attests that "Du was not provided training opportunities that other clinicians were provided because her leadership stated they did not believe in her skills nor ability to learn." *Id.*

---

[9] One of these trainings is the July 26 training hosted by Kartel and addressed in Section III(a)(i).

[10] Du does not allege Conroy as a comparator in any of her briefings.

at 17. However, this former employee does not attest that this belief stemmed from Du's race or sex or provide any specific details about when leadership made this claim. Another Haley employee attests that Du was not allowed to attend a specific training that "was only allowed to be attended by another colleague[.]" *Id.* at 21. This employee does not provide the name, race, sex, or job title of this colleague. This evidence is not enough to create a genuine issue of material fact.

In her supplemental briefing, Du argues that the VA addresses only eight events from her 2018, 2019, and 2021 EEO Complaints and fails to address other events in her background section in her response. Doc. 80 at 9. Although Du discusses additional events in her briefing, she does not explain how race or sex played a role in any of these events. [11] Additionally, the record does not support such a finding. The only specific incident in the record that could support a finding that race or sex played a role in the VA's adverse employment actions is comments Kartel made to Du.

On July 3, 2019, Acting Chief of Orthotics Michael Kartel said to Du, "Am I not speaking English? Do you understand English?" Doc. 40-4 at 110:5–17. Kartel was Du's direct supervisor at the time. Doc. 53-7 at 109. Kartel denies stating, "Do you

---

[11] Du lays out the factual background behind other events but does not connect them to her race or sex. When Du does argue that she was treated differently because of her race and sex, she cites generally to her statement of facts. *See e.g.*, Doc. 53 at 3 ("As set forth in the Response to Defendant's Statement of Facts, it also includes evidence Plaintiff was treated differently based on her race, sex and EEO activity."); Doc. 80 at 6 ("[T]he facts in dispute which were identified in [Doc. 53] support the fact that a jury can find that the Defendant continued to take actions in this case based on her race and gender animus. The factual background of [Doc. 53] beginning on page 4 lays a substantial basis for the strong disputes that the Plaintiff has with the Defendant's facts."). Du is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports her claims. *See Brown*, 1999 WL 1449761, at *13.

24

understand English" but agrees that he said, "Am I not speaking English?"[12] *Id.* Kartel

stated that this remark was not said directly to Du or in a hostile tone. *Id.* Rather, he

used those words as a figure of speech to convey his disbelief that Du continued to

reject his help. *Id.* Considering the evidence in the light most favorable to Du, a jury

could find that Kartel's remarks were directed at her race.

Isolated and general racial remarks are not direct evidence of discrimination

when they are "too remote in time or too attenuated." *Ross v. Rhodes Furniture, Inc.*,

146 F.3d 1286, 1291 (11th Cir. 1998). However, isolated general racial remarks may

constitute circumstantial evidence of discrimination. *Id.* The "proper inquiry" is

whether the remark, "when read in conjunction with the entire record," is

circumstantial evidence of the decisionmaker's "discriminatory attitude." *Id. See,* for

example, *Silvestri v. Jupiter Inlet Colony*, Fla., 614 F. App'x 983, 984 (11th Cir. 2015)

*(*"[A] stray remark, isolated and unrelated to the challenged employment decision,

standing alone, is insufficient to establish a material fact on pretext.")

Even if the remark by Kartel was directed at Du's race, it is not enough to show

that race played a role in the VA's adverse employment actions against Du. This is a

single racial remark made by Kartel and the only one alleged to have been made by

the VA. There is no other evidence in the record that supports a finding that the VA

had a racial animus against Du. Kartel was Du's supervisor for approximately a

month. Doc. 40-5 at 14. Additionally, Kartel did not play a role as a decision maker

---

[12] Construing the facts in the light most favorable to Du, the Court assumes that Kartel
made both statements.

in any of the events from the 2018, 2019 and 2021 EEO Complaints. *See* Doc. 40-5 at 40, 44. Therefore, Kartel's remark is unrelated to any employment decision.

There is no genuine dispute of material fact regarding whether the VA's adverse employment actions were motivated in part because of Du's race or sex. The VA is entitled to judgment, as a matter of law, in its favor on Counts I and II.

### b. Retaliation (Count III)

To make out a case of retaliation, a public-sector plaintiff must show that she (1) engaged in protected EEO activity and (2) suffered an adverse employment action, and (3) she must establish a causal link between the protected activity and the adverse action.[13] *Terrell v. Sec'y, Dep't of Veterans Affs.*, No. 2114185, 2024 WL 1671962, at *7 (11th Cir. Apr. 18, 2024). The first prong protects "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the [EEOC.]" *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). To satisfy the third prong, federal-sector plaintiffs, such as plaintiff, only need to show that retaliation played any part in the decision-making process. *Buckley v. Sec'y of Army*, 97 F.4th 784, 798 (11th Cir. 2024). Under the lightened federal-sector standard, "a federal-sector plaintiff must still point to circumstantial evidence demonstrating discrimination or retaliation[.]" *Davis v. Collins*, No. 6:23-CV-68-JSS-DCI, 2025 WL 1266767, at *9 (M.D. Fla. May 1, 2025).

---

[13] Defendant only disputes the third element.

26

The VA contends that the record shows no evidence connecting any of its adverse employment actions to Du's protected EEO activity. Doc. 40 at 19-20, 23. The VA argues that Du has not shown any direct evidence of retaliation or temporal proximity between her protected activity and its adverse employment actions. Doc. 74 at 11.

### i. Temporal Proximity

Plaintiff can show that retaliation played a part in the decision-making process where there is a "close temporal proximity between the employee's protected conduct and the adverse employment action[.]" *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (in the context of a but-for inquiry). "[T]hree months between the two events is . . . not enough, standing alone, to establish that a retaliatory motive tainted the decision-making process[.]" *Buckley v. Sec'y of Army*, 97 F.4th 784, 799 (11th Cir. 2024); *see Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (three and a half months was insufficient in the context of a but-for inquiry); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (finding three to four months was insufficient in the context of a but-for inquiry); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("[N]o more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself).

Du argues that the temporal proximity between her protected activity and the VA's adverse employment actions suggests retaliatory motive. Doc. 80 at 16-17. Plaintiff wants the applicable date for protected EEO activity to include Du's entire

27

participation in EEO activity, which Du argues continued throughout the filings of her EEO Complaints and their resolutions. *Id.*

In *Blanc v. City of Miami Beach*, 965 F. Supp. 2d 1350, 1356 (S.D. Fla. 2012), the plaintiff argued that the filing of an EEOC claim was protected activity along with the negotiation and attempted enforcement of a settlement agreement from that EEOC claim. *Id.* Unlike Du, the plaintiff in *Blanc* pointed to a specific event (negotiation and settlement of EEO claim) and date when arguing for an applicable date beyond the filing of the EEO complaint. *Id.* at 1352. Du fails to provide any dates or cite to the record in support of any continued EEO activity. Here, Du states, "there was litigation of [her EEO Complaints] which involved participation in production of documents, depositions, and other testimony at the administrative stage and later in Federal Court[.]" Doc. 80 at 17. Du does not provide any dates or citations to the record for these activities. Du does mention two amendments to her 2018 EEO Complaint but does not provide any dates or citations.

The proximity clock begins to run not when Plaintiff engages in the protected activity but the date the decision-maker gains knowledge of that protected activity. *Gilliam v. U.S. Dep't of Veterans Affs.*, No. 2:16-CV-255-JES-UAM, 2018 WL 3707834, at *8 (M.D. Fla. Aug. 3, 2018) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Viewing the evidence in the light most favorable to Plaintiff, the Court will consider the applicable dates for protected EEO activity as the date the decision-makers first became aware of the 2018 EEO Complaint, the dates Du filed

amendments to her 2018 EEO complaint, and the dates Du filed her 2019 and 2021 EEO complaints.[14]

**1. Request to attend trainings (July 16, 2018)**

**2. Extension temporary detail (August 28, 2018)**

**3. Change of tour of duty (August 28, 2018)**

**4. Reprimand (August 29, 2018)**

**5. Exclusion from training (September 17, 2018)**

There is no evidence that there was close temporal proximity between Du's protected activity and these five events. The first event occurred over five years after the EEOC's Final Agency Decision for Du's 2012 EEO Complaint. The first four events occurred prior to Du engaging in any EEO activity related to her 2018 EEO Complaint. She first spoke to an EEO investigator on September 5, 2018. Doc. 63 ¶ 14. The only event that occurred after Du's initial contact with an EEO investigator was Shamp excluding Du from an educational in-service on September 17, 2018. However, Du did not file her 2018 EEO Complaint until October 18, 2018, and Shamp only became aware of Du's EEO activity on January 8, 2019. *Id.*; Doc. 40-1 at 55. Therefore, there is no genuine dispute of material fact regarding whether a temporal

---

[14] Du emails Bullard and Shamp on March 22, 2018, stating, "Robinson creates a hostile environment that hinders me from providing care[.]" Doc. 53-2 at 65-66. This conduct is not protected activity because it does not allege that Du's treatment was based on her race or sex. *See Jeronimus v. Polk Cnty. Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005) (finding that an email in which an employee complained about working in a "hostile environment" was not protected conduct because it never suggested that the treatment was due to a protected characteristic such as race or sex).

proximity between Du's protected EEO activity and these five events suggest a retaliatory motive. They do not.

### 6. AWOL charge (July 3, 2019)

### 7. Denial of sick leave (July 3, 2019)

There is no evidence that there was close temporal proximity between Du's protected activity and her AWOL charge and denial of sick leave. Both events are over five months from when Bullard received knowledge of the 2018 EEO Complaint on January 8, 2019. *See* Doc. 53-6 at 172. Both events are also over five months from when Du amended her 2018 EEO Complaint on January 8, 2019, and again on January 18, 2019. Therefore, there is no genuine dispute of material fact regarding whether a temporal proximity between Du's protected EEO activity and these events suggest a retaliatory motive. They do not.

### 8. Non-selection for the GS-12 position (10/20/21)

There is no evidence that there was close temporal proximity between Du's protected activity and her non-selection for the GS-12 position. The non-selection arose three years after Du filed her 2018 EEO Complaint and over two years after she filed her 2019 EEO Complaint. Doc. 63 ¶¶ 14, 23. Du filed her 2021 EEO Complaint as a result of this event. Therefore, there is no genuine dispute of material fact regarding whether a temporal proximity between Du's protected EEO activity and the VA's adverse employment actions suggest a retaliatory motive. They do not.

### ii.  Pattern of Antagonism

Du argues that the passage of time is not legally conclusive proof against a pattern of retaliation. Doc. 80 at 16. Du contends that the record in this case shows a pattern of antagonism. Doc. 80 at 16-17.

Where there was a significant time gap between the protected activity and the adverse action, the plaintiff must offer additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate. *Ward v. United Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014). The pattern of antagonism should be "consistent and continuous during the intervening period" between the protected activity and adverse employment action. *See Bartos v. MHM Corr. Servs., Inc.*, 454 F. App'x 74, 79 (3d Cir. 2011).

To show a pattern of antagonism, a plaintiff must show "actual antagonistic conduct or animus in the intervening period between the protected activity and the retaliation." *Kriss v. Fayette Cnty.*, 504 F. App'x 182, 188 (3d Cir. 2012) (citation modified). For example, a plaintiff can support a pattern of antagonism through a "constant barrage of written and verbal warnings ... and disciplinary action[s] ... soon after plaintiff's initial complaints." *Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993). A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must "offer [a] basis for linking the disciplinary actions to her [protected activity]." *Bartos v. MHM Correctional Servs.*, Inc., 454 F. App'x 74, 79 (3d Cir. 2011).

31

Du is correct that she can show a causal connection between her protected EEO activity through a showing of an "intervening pattern of antagonism." *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). However, she does not present facts supporting a pattern of antagonism. Du repeatedly makes blanket statements without any specific citations to the record. Du asserts that each time she made a claim of discrimination, "shortly thereafter continued retaliation occurred[,]" and the entirety of that retaliation "shows a pattern of antagonism." Doc. 80 at 16-17. Du does not follow up by pointing to any factual instances supporting a pattern of antagonism.

Even considering the record, Du cannot establish a pattern of antagonism. The record does not support a pattern of antagonism following protected activity from the Final Agency Decision in 2012, the 2018 EEO Complaint, the 2019 EEO Complaint, or the 2021 EEO Complaint.

### 1. 2012 Final Agency Decision

Any potential antagonism occurring between the Final Agency Decision against the VA on November 30, 2012, and any adverse employment action is not "consistent and continuous during the intervening period[.]" *See Bartos*, 454 F. App'x at 79. The earliest instance of potential antagonism in the record occurred with the February 8, 2018, incident with Robinson. A gap of six years between the protected activity and the first instance of antagonism cannot support a consistent and continuous pattern of antagonism.

32

## 2. 2018 EEO Complaint

The only evidence in the record between Du's 2018 EEO complaint and the following adverse employment action against her (AWOL charge on July 3, 2019) that could potentially support a finding of a pattern of antagonism is (1) Bullard ignoring Du's requests to attend the Warrior Games, (2) Tate telling Du to return to work at the hospital instead of attending the Warrior Games, (3) Bullard asking Du for an additional physician's note, and (4) Kartel's comments on July 3, 2019.[15]

First, Du requested approval from Bullard to attend the Warrior Games for the week of June 23, 2019. Doc. 53-7 at 145. Bullard did not respond to Du's request because there was a death in her family, so Tate responded to Du's request instead. *Id.* A reasonable jury could not find that Bullard's failure to respond to Du's request was part of a pattern of antagonism or that it demonstrated retaliatory animus.

Second, Tate prohibited Du from continuing to attend the Warrior Games and ordered her to return to the main hospital. Doc. 53-7 at 141. Tate had received reports that Du was going beyond her scope of duty at the Warrior Games. Doc. 40-1 at 148. A reasonable jury could not find that Tate's decision to prohibit Du from attending the Warrior Games was part of a pattern of antagonism or that it demonstrated retaliatory animus.

---

[15] Plaintiff alleges that on January 19, 2019, she was excluded on an invitation sent to the entire department about the future of the Prosthetics Department. Plaintiff fails to cite to the record for this allegation and, after searching the voluminous record, this invitation was not found.

Third, Bullard asked Du for a detailed physician's note in response to her request for sick leave. On July 1, 2019, Plaintiff requested leave and submitted a physician's note that simply said "[p]rocedure done to leg[.]" Doc. 53-7 at 132-33. Bullard noted that the requested leave was for the dates of June 26 to June 28 and management had received reports that Du attended the Warrior Games during the dates she requested sick leave. *Id.* at 131.[16] As a result, Bullard requested a more detailed physician's note. *Id.* at 134. A reasonable jury could not find that Bullard's request of Du for a more detailed physician's note was part of a pattern of antagonism or that it demonstrated retaliatory animus.

Last, on July 3, 2019, Kartel asked Du, "Am I not speaking English" and "Do you understand English?" Docs. 40-4 at 110, 43-7 at 217. Kartel only became aware of Du's EEO activity after he made those comments to Du. Doc. 40-5 at 16, 21. Thus, a reasonable jury could not find that Kartel's comments were part of a pattern of antagonism. *See Brunqart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him.").

### 3. 2019 EEO Complaint

The only evidence in the record between Du's 2019 EEO complaint and the following adverse employment action against her (non-selection for the GS-12

---

[16] Du was photographed at the Warrior Games on the dates she requested sick leave, and a witness signed and confirmed that Du attended the Warrior Games for these dates. Doc. 40-1 at 189-95.

position) that could potentially support a pattern of antagonism is Tate's denial of Du's request for a different fact-finder in the investigation into Kartel's comment.

Du requested a neutral fact-finder for the investigation into the alleged discriminatory comment made by Kartel. Jennifer Karczewski, assistant chief of prosthetics, was assigned to conduct the fact finding. Doc. 53-7 at 186. Du claimed that Karczewski was not neutral because she was in the Prosthetics Department and sought a different factfinder. *Id.* Tate asked Du to provide information that suggests that Karczewski was not neutral to which Du repeated that personnel from the Prosthetics Department are biased and they rule in favor of the Prosthetics Department. *Id.* at 185. Based on this record, this is not evidence upon which a reasonable jury could find retaliatory animus. Both Du and Kartel are a part of the Prosthetics Department. Additionally, Karczewski was not in Kartel's chain of command of supervision. Doc. 53-2 at 75.

### 4. 2021 EEO Complaint

There is no evidence in the record after Du's 2021 EEO Complaint of any adverse employment action.

Thus, no reasonable jury would be able to find a pattern of antagonism based on this record.

### iii.  First Opportunity to Retaliate

Next, Du argues that Bullard retaliated against Du because of the 2011 EEO Complaint, which resulted in a finding on November 30, 2012, against the VA and a five-day suspension without pay for Bullard. Docs. 80 at 17; 53-2 at 74. Du further argues that this retaliatory animus continued until 2017 and 2018 which gave Bullard the opportunity to act against Du. Doc. 80 at 17. Du contends that Bullard first had the opportunity to retaliate in 2017 and 2018 when she received allegations from another employee against Du, which resulted in Bullard sending an email on May 23, 2018, telling prosthetics staff not to get involved. *See* Doc. 40-1 at 46.

In *Thomas v. Richmond Cnty. Sch. Dist.*, No. CV 107-092, 2008 WL 4857521, at *11 (S.D. Ga. Nov. 6, 2008), the court considered the retaliation claim of a bus driver who claimed he was not promoted because of prior EEO activity. *Id.* at *1. The court rejected the first opportunity to retaliate rationale where there were "many other avenues that could have been taken [by Defendants]." *Id.* at *11. The court reasoned that "[d]efendants could have fired her, demoted her, changed her bus route, or any other variety of adverse actions." *Id.*

There is no evidence in the record that Bullard's first opportunity to retaliate was over five years after the resolution of Du's 2011 EEO Complaint. Bullard has been Haley's chief of prosthetics since 2009, and Du has not pointed to any evidence that Bullard's authority changed from 2011 to 2017. *See* Doc. 40-2 at 8. As supervisor of all prosthetics staff, Bullard could have retaliated against Du in a number of ways before 2017.

36

There is no genuine dispute of material fact regarding whether the VA's adverse employment actions were connected to Du's protected activity. Thus, summary judgment will be granted in favor of the VA on Count III.

### c. Retaliatory Hostile Work Environment (Count IV)

Du alleges that she was subjected to a hostile work environment in retaliation for her EEO activity.[17] "Title VII prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021). Retaliatory hostile work environment claims are retaliation claims and evaluated under the retaliation standard of "whether the employer's complained-of action well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Buckley v. Sec'y of Army*, 97 F.4th 784, 799 (11th Cir. 2024) (citation modified). The alleged retaliatory hostile work environment conduct must be causally linked to Plaintiff's protected conduct. *Bradley v. Postmaster Gen.*, No. 21-12833, 2022 WL 4352633, at *2 (11th Cir. Sept. 20, 2022).

The VA argues that the record does not reflect any evidence that any alleged harassment was based on Du's protected activity. Doc. 74 at 20.

---

[17] Defendant addresses a substantive hostile work environment claim in its briefing; however, Plaintiff has previously maintained that Count IV only alleges a retaliatory hostile work environment claim. *See* Doc. 32 ¶ 13. Therefore, the Court need only address the retaliatory hostile work environment claim.

Du points to more acts[18] in addition to the eight acts described in Section (III)(b)(i) for her retaliatory hostile work environment claim.[19] Doc. 80 at 18-19. Du argues that Bullard's email from May 23, 2018, and her change in schedule starting on September 19, 2018, support a finding of retaliatory harassment.[20] *Id.* Du does not allege that these acts were connected to her EEO activity or point to any evidence in the record to suggest such. Additionally, both Bullard's email and Du's change in schedule[21] occurred prior to the filing of Du's 2018 EEO Complaint. Doc. 53-4 at 56; 53-5 at 62. Therefore, there is no genuine dispute of material fact regarding whether these acts were in retaliation for Du's protected activity.

Even looking at the record as a whole, there is no evidence to suggest Du was subjected to a hostile work environment in retaliation for her protected activity. "[I]t is only those actions, directed at a complainant, that stem from a retaliatory animus which may be factored into the retaliatory hostile work environment calculus." *Moore*

---

[18] Plaintiff fails to cite to the record when discussing some of these additional acts. *See* Docs. 53 at 23 ("Her fundamental duties were changed and taken away."); 80 at 18 ("[T[here were a number of actions taken which were humiliating or embarrassing to Plaintiff as discussed she was required to do things others were not to attend training."); *Id.* at 18-19 ("She was given a markedly different schedule from other employees and had duties for which she was not only certified[,] but which were in her position description taken away from her and the entire service knew it."). Therefore, the Court will only consider the two additional acts in which Plaintiff cites to the record *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials[.]").

[19] Du fails to show that her prior EEO activity played any part in the decision-making process for the eight discreet acts and thus fails to show a causal connection between these acts and her EEO activity. *See* Section III(b)(i), supra, for a full discussion of the issue.

[20] Du also cites to Kartel's comments on July 3, 2019, but Kartel was not aware of Du's protected activity when he made the comments. *See* Section III(b)(ii)(2), supra, for a full discussion of the issue.

*v. Shands Jacksonville Med. Ctr., Inc.*, No. 3:09-CV-298, 2013 WL 11327134, at *33 (M.D. Fla. Oct. 18, 2013), *aff'd sub nom. Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924 (11th Cir. 2015). As discussed in Section III(b)(ii), the record fails to reflect any retaliatory animus against Du.

Therefore, Du's retaliatory hostile work environment claim fails. Summary judgment will be granted for the VA as to Count IV.

## IV. Conclusion

Plaintiff contends that she was discriminated against by the VA based on her race and sex and retaliated against due to her EEO complaints. Plaintiff complains about several decisions made by the VA about which she disagrees. But, an employer may act for a good reason or a bad reason as long as it does not act for an unlawful reason. Federal Courts do not sit as super-personnel departments that reexamine an entity's business decisions. *Tonkyro v. Sec'y, Dep't of Veterans Affairs*, No. 8:16-cv-2419-CEH-AEP, 2024 WL 2846356, at *8 (M.D. Fla. June 5, 2024). The record, taken as a whole, could not lead a rational trier of fact to find for plaintiff on her claims of discrimination, retaliation, and retaliatory hostile work environment. Because there is not sufficient "evidence on which the jury could reasonably find for [Du]," Defendant is entitled to summary judgment in its favor. *Burger King v. Weaver*, 169 F.3d 1310,1321(11th Cir. 1999).

Accordingly, it is hereby **ORDERED:**

1.  Defendant's Motion for Summary Judgment (Doc. 40) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendant Department of Veteran Affairs, to terminate any other pending motions and deadlines, and to close this case.

3. **DONE** and **ORDERED** in Tampa, Florida on June 30, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to: Counsel of Record; Unrepresented Parties